IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 12-0739-WS-B |
| | ) |
| DAVID K. GREEN and CHARLOTTE D. GREEN, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 12) directed at both defendants, David K. Green and Charlotte D. Green. The Motion is ripe for disposition.

**I.    Background.**

This case is one of numerous loan default actions that have landed on this District Court's docket in recent years. In a commonplace scenario in this sort of litigation, the defendants have been properly served with process, but have not met their obligations under the Federal Rules of Civil Procedure. Specifically, they have failed to respond, answer or in any way defend against the well-pleaded claims. Default having been entered, defendants having received ample notice of the pendency of such default proceedings and having steadfastly opted to remain silent, all that now remains to be done is for the Court to verify that entry of judgment is appropriate and, if so, fix damages and enter default judgment.

Plaintiff, SE Property Holdings, LLC ("SEPH") commenced this action by filing a Complaint (doc. 1) against defendants, David K. Green ("Mr. Green") and Charlotte D. Green ("Ms. Green"), in this District Court on December 6, 2012. The Complaint alleged two state-law causes of action for breach of contract, one against each defendant, with both claims arising from

a singular unpaid loan.[1]  The well-pleaded factual allegations of the Complaint describe the circumstances and terms of the loan, and defendants' nonpayment of same, in substantial detail.

The loan in question, Loan No. 80008968, took the form of a Home Equity Line of Credit Agreement executed by the Greens in favor of SEPH's predecessor in interest, in the principal amount of $200,000.  (Doc. 1, ¶ 9.)  That loan was transferred on a pair of occasions, but was purchased by SEPH in August 2012, such that SEPH now owns all right, title and interest in such loan.  (*Id.*, ¶¶ 10, 12.)  The Complaint alleges that the Greens defaulted on the loan in or around July 2012 by failing to make contractually required payments.  (*Id.*, ¶ 11.)

The record shows that SEPH timely and properly served process on the Greens in this case.  In particular, a private process server personally served a copy of the Summons and Complaint on Mr. Green at an address in Monteagle, Tennessee, on January 9, 2013.  (Doc. 9.)  On the same date, the same process server personally served a copy of the Summons and Complaint on Ms. Green at the same address.  (Doc. 10.)  These filings contain clear proof of service in compliance with Rule 4(e)(2)(A), Fed.R.Civ.P.; however, the Greens have neither appeared nor taken any action to defend against SEPH's claims.  On that basis, a Clerk's Entry of Default (doc. 13) was entered against both defendants pursuant to Rule 55(a), Fed.R.Civ.P., on February 1, 2013.[2]  SEPH has filed a Motion for Default Judgment, supported by affidavits

---

[1]   Notwithstanding the purely state-law nature of these claims, SEPH properly predicated federal subject-matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332.  In particular, the Complaint reflects that the amount in controversy (*i.e.*, the sum claimed to be due and owing on the subject loan) is well above the $75,000 jurisdictional threshold and that complete diversity of citizenship exists among the parties (inasmuch as SEPH is a limited liability company whose sole member is an Ohio corporation with its principal place of business in Ohio, whereas defendants are both citizens of Tennessee or Alabama for diversity purposes).  On this showing, the Court is satisfied that federal jurisdiction has properly been invoked.

[2]   The court file confirms that the Greens have been given adequate notice of these default proceedings.  Indeed, the Clerk's Office mailed copies of the Clerk's Entry of Default to each defendant at the mailing address listed on the face of the Summonses.  Moreover, Certificates of Service confirm that SEPH served copies of both its Application for Entry of Default and its Motion for Default Judgment on the Greens at multiple known addresses in Tennessee and Alabama.  (*See* docs. 11, 12.)  Despite such notice of these default proceedings and a reasonable opportunity to appear and be heard both before and after the Clerk's Entry of Default, the Greens have chosen to refrain from taking action to defend their interests in this case.  Accordingly, the Court concludes that no further notice or invitation to defendants is warranted prior to entry of default judgment.

and exhibits to prove up the damages sought.  Despite being afforded more than four weeks to respond to the Motion for Default Judgment, to request that the default be set aside under Rule 55(c), to contest damages or otherwise to be heard or participate in these proceedings, the Greens have not appeared.

**II.     Analysis.**

   *A.     Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, defendants have failed to appear or otherwise acknowledge the pendency of a lawsuit for more than seven weeks after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.[3]  In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has

---

[3]     *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what the Greens have done here. Despite being served with process in early January 2013, defendants have declined to appear or defend, and have effectively prevented this litigation from leaving the starting blocks.

The law is clear, however, that the Greens' failure to appear and the Clerk's Entry of Default do not automatically entitle SEPH to a default judgment in the requested (or any) amount. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Cotton States Mut. Ins. Co. v. Sellars*, 2008 WL 4601015, *5 (M.D. Ala. Oct. 15, 2008) ("the failure to defend does not automatically entitle a plaintiff to recover"); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint, and is satisfied that it sets forth viable causes of action against the Greens under Alabama law. The well-pleaded factual allegations of the Complaint reflect that the Greens jointly entered into a Home Equity Line of Credit Agreement with SEPH's predecessor with respect to Loan No. 80008968 in August 2005, that in that agreement the Greens promised to make certain payments in consideration for money that was loaned to them, that the Greens breached the terms governing that loan in or about July 2012 by failing to make required payments to SEPH, and that SEPH has been damaged by such non-performance.

These and other factual allegations in the Complaint are adequate to state viable causes of action under Alabama law for breach of contract.[4]  Because the well-pleaded factual allegations in the Complaint are deemed admitted by virtue of Greens' defaults, and because they are sufficient to state breach-of-contract claims under Alabama law, the Court finds that Mr. Green is liable to SEPH on Count One, and that Ms. Green is liable to SEPH on Count Two.  Simply put, then, entry of default judgment against the Greens is appropriate pursuant to Rule 55, given their failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which the Greens have now admitted) to establish their liability to SEPH for breach of contract as specified in Counts One and Two of the Complaint.

### B. Applicable Legal Standard for Damages.

Notwithstanding the propriety of default judgment against the Greens, it remains incumbent on SEPH to prove its damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks.").  Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine,*

---

[4] *See generally National Sec. Fire & Cas. Co. v. DeWitt*, 85 So.3d 355, 371 (Ala. 2011) ("In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (citations omitted); *Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (similar).  "A promissory note is a form of contract; therefore, it must be construed under general contract principles." *Bockman v. WCH, LLC*, 943 So.2d 789, 795 (Ala. 2006).

*LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[5] "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

      C.     *Unpaid Principal and Interest on Loans.*

To prove its damages, plaintiff has submitted the Affidavit of Deborah D. Ard, Assistant Secretary for SEPH. Plaintiff's evidence reflects that the line of credit encompassed by Loan No. 80008968 was in the principal amount of $200,000, with regular interest accruing at the Wall Street Journal Prime Rate (6.5% at the time the agreement was executed). (Doc. 12, Exh. A, ¶ 4; doc. 1, Exh. A.) This evidence further establishes that the unpaid principal amount due and owing on the Greens' loan is **$200,779.66**.

---

[5] In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, SEPH has not requested a damages hearing, but has instead submitted evidence in support of the specified damages amounts. In light of these authorities and circumstances, the damages determination will stand or fall on the written evidentiary submissions, without the necessity of a formal hearing.

With regard to interest, SEPH calculates and claims interest at a rate of 18% per annum. (Doc. 12, Exh. A, ¶ 6; doc. 1, Exh. A, ¶ 16.)  The obvious problem with this claim is that plaintiff has identified no provision (and the Court has found none) in the Home Equity Line of Credit Agreement that would provide for an 18% default rate of interest.  The Complaint refers generally to the "Annual Percentage Rate and Daily Periodic Rate" section of that Agreement (*see* doc. 1, ¶ 16) as the source of the 18% interest rate; however, the contract language is to the contrary.  That section provides that interest will accrue at an "Annual Percentage Rate," which "is calculated using the current index rate of 6.50% and adding the margin for this line of credit of 0%."  (Doc. 1, Exh. A, ¶ 4.)  That section is devoid of any reference to a default rate of interest, much less any language fixing such a default rate at 18%.[6]  To make matters worse, plaintiff has not furnished its arithmetic or any information regarding the applicable interest rate that might enable the Court to replace SEPH's facially improper interest calculations with the correct ones as provided for in the agreement.  Inasmuch as it is plaintiff's burden to prove damages, and SEPH has failed to make the requisite showing that would allow interest to be fixed with reasonable precision but has instead demanded an extra-contractual interest rate of 18%, the Court will disallow interest as a category of damages in this case.

Plaintiff having demonstrated that the bold-type amount set forth above is an element of damages that it is entitled to recover against the Greens in this matter, the default judgment to be entered against defendants, jointly and severally, will reflect principal damages on the breach-of-contract claims totaling **$200,779.66**.  Plaintiff having failed to prove the amount of interest to which it is entitled under the applicable agreement and having utilized an interest rate that appears untethered to the applicable loan agreement, interest damages will not be awarded.

    **D.**    *Plaintiff's Claim for Attorney's Fees and Costs.*

In addition to unpaid principal and default interest, SEPH seeks an award of attorney's fees and costs incurred in enforcing defendants' payment obligations.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by

---

[6] To be sure, the agreement states that "[t]he ANNUAL PERCENTAGE RATE on your Home Equity Line of Credit will not exceed Eighteen percent (18%)."  (Doc. 1, Exh. A, ¶ 4.)  But nothing in that agreement provides that the interest rate will automatically escalate to 18% upon borrower default, or recites any circumstances under which the applicable interest rate will diverge from the subject index.

contract ….." *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same).[7]  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984); *see also Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case.").  Here, the Home Equity Line of Credit Agreement specifies that if the Greens fail to make a monthly payment when due under the agreement, "Borrower shall pay all of the Bank's costs of collection, including 15% attorney's fees and court costs."  (Doc. 1, Exh. A, ¶ 16.)  Notwithstanding this language, SEPH is not entitled to attorney's fees in the amount of 15% of the unpaid principal, but is instead entitled to nothing more than its reasonable attorney's fees actually accrued.  This is because Alabama law imposes a reasonableness constraint on all fee-shifting contracts, as a matter of public policy.  *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010) (rejecting claim for attorney's fees in amount of 15% of fund to be collected, where plaintiff made no showing of its actual attorney's fee incurred in enforcing contract).  Thus, plaintiff is entitled to recover only its reasonable attorney's fees and costs incurred in collecting on the Greens' debt under the agreement.

It is well-settled that "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." *Kiker v. Probate Court of Mobile County*, 67 So.3d 865, 867 (Ala. 2010) (citations omitted).  To guide this reasonableness inquiry, Alabama courts recognize a non-exhaustive list of criteria that may properly be considered, including: "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor

---

[7] The Eleventh Circuit has hewed to the same principle.  *See, e.g., Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) ("under the 'American Rule' parties in litigation are expected to bear their own attorney's fees and costs"); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) ("Generally, in federal litigation, … a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties.").

requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552-53 (Ala. 2004) (citation omitted).

As a general proposition, "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.... The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

Plaintiff claims an award of attorney's fees of $4,859.00. The Court has reviewed SEPH's evidentiary submission on attorney's fees for reasonableness, and finds with three exceptions that the requested fees are reasonable.[8] Those exceptions, and the modifications to the fee award necessitated by each, will be discussed in turn.

First, with respect to reasonable hourly rates, the Court finds that SEPH has failed to meet its burden of supporting the reasonableness in the local legal market of the claimed $190 hourly rate for Attorneys Meaghan E. Hill and J. Breanne S. Zarzour, whom plaintiff's filings characterize as associates with approximately one year of professional experience. (Graham Aff. (doc. 12, Exh. B), ¶ 4.) These junior associates' time will be compensated at an hourly rate of $150 instead, which the Court finds reasonable after due consideration of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable

---

[8] Plaintiff has not claimed attorney's fees in connection with the preparation of its motion for default judgment, nor has it sought reimbursement of the civil filing fee or process server fees incurred in this matter. Therefore, none of these categories of fees and expenses will be awarded.

skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Second, with regard to paralegal hourly rates, considerable precedent confirms that the $120 sought by plaintiff is well in excess of the applicable prevailing rate. *See, e.g., SE Property Holdings, LLC v. Stradley*, 2012 WL 2130806, *4 (S.D. Ala. June 11, 2012) (where prevailing plaintiff in commercial dispute sought award for paralegal time at $110 per hour, observing that "[r]ecent opinions from this District Court reflect that the going rate for paralegals in the Mobile market is substantially lower"); *Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) ("this district has customarily awarded $75.00 per hour … for paralegals in this district performing work traditionally performed by an attorney"); *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, *6 (S.D. Ala. May 17, 2011) ("Judges in this district have repeatedly approved paralegal rates of $75 an hour.") (citation omitted). Plaintiff has not made a sufficient showing to support a higher rate by establishing, for example, that the paralegal involved in this action possesses unusually advanced qualifications or expertise. Therefore, the Court will utilize a reasonable rate of $75.00 per hour for allowable paralegal time herein.

Third, with regard to reasonable hours, the law is clear that "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary. Courts are not authorized to be generous with the money of others." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal quotation marks omitted). Under that standard, modest deductions from plaintiff's claimed hours are warranted for the following categories of time entries: (i) billings for clerical tasks at a paralegal or lawyer rate (*i.e.*, "separate bulk pdf of loan documents," "prepare notice of appearance," "filed NOA for AES and AEG as well as Corporate Disclosure Statement," "mark exhibits"); (ii) potentially excessive billings for intraoffice conferences among 5 different timekeepers for a small matter; (iii) premature preparation of litigation documents (report of parties planning meeting, initial disclosures) that were never filed; and (iv) billings for monthly status reports. The offending entries amount to relatively little time in the aggregate; therefore, the Court exercises its discretion to reduce plaintiff's requested hours by 15% across the board. *See Bivins*, 548 F.3d at 1350 (where records show unreasonable hours billed, a court "has two

choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut").

After making these appropriate modifications to rates and hours, the Court finds that the proper lodestar amount to be awarded to plaintiff under the attorney's fee provision of the relevant loan documents is **$3,153.50**.  The requested costs and expenses of **$14.83** are adequately documented and are approved as reasonable.  Adding attorney's fees and costs to the loan balance previously found to be due and owing, the proper amount of the default judgment to be entered against defendants is **$203,947.99**.

### III. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** that Plaintiff's Motion for Default Judgment (doc. 12) is **granted in part, and denied in part**.  A default judgment will be entered in favor of plaintiff, SE Property Holdings, LLC, and against defendants, David K. Green and Charlotte D. Green, jointly and severally, in the total amount of **$203,947.99**.

DONE and ORDERED this 1st day of March, 2013.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE